UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHUNLAN WANG, individually, and as
Next Friend of RZ, a minor,

        Plaintiff,                             Case No. 15-cv-14403

v.                                                  Honorable Thomas L. Ludington

MIDMICHIGAN HEALTH and
MIDMICHIGAN MEDICAL CENTER –
MIDLAND,

        Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND DISMISSING COUNTS I, IV, & VI OF AMENDED COMPLAINT WITH PREJUDICE AS TO CHUNLAN WANG**

Plaintiff Chunlan Wang filed this lawsuit on her own behalf and on behalf of her minor son RZ on December 21, 2015. Wang sued MidMichigan Medical Center-Midland and MidMichigan Health (collectively "MidMichigan")[1] for harm arising out of burns suffered by her son over ten years ago on the day he was born.

Wang brings six different claims for relief in her complaint. She alleges against MidMichigan claims of ordinary negligence (Count I), professional negligence (Count II), res ipsa loquitur (Count III), negligent infliction of emotional distress (Count IV), vicarious liability (Count V), and injuries and damages (Count VI). Wang claims to bring each Count on behalf of herself and on behalf of RZ, although the factual allegations supporting each Count do not support such broad relief.

---

[1] Wang named as Defendants MidMichigan Medical Center-Midland d/b/a MidMichigan Health and MidMichigan Health d/b/a MidMichigan Medical Center-Midland, apparently in an attempt to be sure she sued the proper party. Evidently, she intended to sue a single entity, not two separate entities. Because of this, Defendants will be referred to as a single entity: MidMichigan or MidMichigan Health.

MidMichigan has moved for partial dismissal of Wang's complaint. MidMichigan claims that Count I of Wang's complaint must be dismissed because it is based on the same set of factual assertions as Count II and thus is duplicative of Count II and does not support the relief sought in Count I. Second, MidMichigan claims that Count IV of Wang's complaint—for negligent infliction of emotional distress—must be dismissed because it is time-barred. It also claims that all of Wang's individual claims must be dismissed as time-barred, to the extent any of the allegations under other counts in the complaint support relief for Wang.

## I.

Plaintiff Chunlan Wang and her son RZ are residents of Tampa, Florida. Defendant MidMichigan is a Michigan corporation located and headquartered in Midland, Michigan. MidMichigan operates a hospital in Midland, Michigan.

### A.

On December 27, 2005, Chunlan Wang gave birth to RZ at MidMichigan at approximately 6:29 p.m. The doctors attending to Wang delivered RZ by cesarean section. RZ weighed seven pounds and nine ounces when he was born. RZ was, by all medical measures, a healthy baby.

### B.

At 6:35 p.m. that night, MidMichigan transferred RZ to the newborn nursery. A nurse took RZ's temperature in the nursery when RZ arrived and his temperature read 99.3 degrees.[2] By 7:00 p.m., RZ's temperature dropped to 97.6 degrees.

MidMichigan transferred RZ back to Wang's room. He was placed in an open crib. The nurses did not take any measures to warm RZ during this time and RZ's temperature dropped to

---

[2] MidMichigan nurses measured RZ's temperature rectally.

96.6 degrees by 7:30 p.m. RZ went into cold stress. A MidMichigan nurse described RZ as "moaning" during this period.

A nurse then attempted to warm RZ with a radiant warmer. To accelerate the warming process, the nurse also placed a heated bag of fluid against RZ's body.[3] The bag was touching RZ's right arm, elbow, and part of his right cheek. MidMichigan then left RZ unattended.

By 8:00 p.m., RZ's temperature was 98.4 degrees. By 9:20 p.m., RZ's temperature was 98.6 degrees.

## C.

The hot water bottle was removed from RZ's body, there was "a large red, splotchy area . . . extending from his forearm to his shoulder." Am. Compl. ¶ 10, ECF No. 6. A couple hours later, a large blister formed in the same area. A nurse observed the blister and noted that MidMichigan staff planned to "watch closely and apply antibiotic ointment if ruptured." *Id*. The nurse noted the "progressive appearance of a blister . . . along the lateral aspect of the right upper arm." *Id*.

At 10:00 p.m., Dr. Eric Becker made the following note:

> . . . right elbow blister with clear fluid, soft approximately 6 cm in size. Red rash extending along lateral aspect of right arm and a 2 cm spot on the right cheek. Likely second degree burn from contact with hot water bottle after delivery, Dr. Kosinski contacted to further evaluate.

*Id*. at ¶ 11. Dr. Kosinski then recorded the following note at 11:20 p.m.: "[RZ has a] wound cover[ing] outer aspect right upper arm from elbow to shoulder—intact bulla with some surrounding erythema small spot erythema right side of face on cheek. Will keep wrapped if bulla ruptures will culture." *Id*.

---

[3] Wang does not know exactly what type of container or what type of liquid was placed against RZ. It will be referred to throughout as a hot water bottle.

MidMichigan transferred RZ to the pediatric intensive care unit at Saginaw Covenant Hospital on December 28, 2005. Saginaw Covenant further treated RZ's burn. A plastic surgeon evaluated RZ and "Determined that RZ had suffered a partial thickness burn on the right arm from his elbow to his shoulder." Id. Saginaw Covenant transferred RZ back to MidMichigan where RZ remained until he was discharged approximately one week later.

## II.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.

Defendant moves to dismiss Counts I & VI of Wang's complaint. It argues that Wang's factual allegations supporting her claim of ordinary negligence sound in professional negligence, necessitating the dismissal of her ordinary negligence claim. It next argues that Wang's claim of negligent infliction of emotional distress ("NIED") in Count VI is time-barred under the relevant

statute of limitations and must be dismissed. It also makes a subsidiary argument in addition to this argument that all of Wang's individual claims for relief should be dismissed.

## A.

First, Defendant claims that the facts alleged in support of Wang's ordinary negligence claim actually sound in professional negligence. As a result, Defendant argues, Wang's ordinary negligence claim must be dismissed.

In *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864 (Mich. 2004), the Michigan Supreme Court explained the circumstances under which a claim of negligence by medical personnel sounds in ordinary negligence or medical malpractice. A claim of medical malpractice "can occur only 'within the course of a professional relationship[]' . . . and necessarily 'raise questions involving medical judgment.'" *Id*. at 871 (quoting *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 465 (Mich. 1999)). "Claims of ordinary negligence, by contrast, 'raise issues that are within the common knowledge and experience of the [fact-finder].'" *Id*. (emendation in original).

The Michigan Supreme Court established a two-part test for determining what legal theory the allegations made by a plaintiff support: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 684 N.W.2d at 871. The court in *Bryant* explained the standard for determining if a professional relationship existed:

> A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff.

*Id*. If there is a professional relationship governing the interaction between the plaintiff and defendant, "the next step is determining whether the claim raises questions of medical judgment requiring expert testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience." *Id*. at 872.

Wang concedes that a professional relationship existed, but challenges the assertion that specialized medical knowledge is necessary for a jury to evaluate her claim of negligence. She argues that her claim may be "evaluated by lay jurors, on the basis of their common knowledge and experience." *Id*. But Wang belies her own argument with the materials she cites in support of it. She relies on burn materials published by Shriners Hospital, the International Association of Firefighters, the University of Michigan Health System's Burn Trauma Unit, and various other professional guidelines. It may be common knowledge that contact with hot objects can cause burns and that a newborn's skin is more sensitive than an adult's skin. But reliance on these sources demonstrates that understanding how rapidly RZ's temperature drop needed to be attended to, how much more sensitive a newborn's skin is to potential burns, and how to treat infants with heating and warming material is beyond the province of a lay jury.

The cases relied upon by Wang are consistent with this conclusion. For example, in *McLeod v. Plymouth Court Nursing Home*, 957 F. Supp. 113 (E.D. Mich. 1997), the plaintiff sued her nursing home after falling out of a wheelchair that was left unlocked or otherwise unstable. This Court concluded that the plaintiff's claim sounded in ordinary negligence because it takes no specialized knowledge to know that an unlocked or unstable wheelchair can result in injury to the occupant. The *McLeod* court observed that "patients' suits for falls were held to sound in ordinary negligence." *Id*. at 115. *See also Fogel v. Sinai Hosp. of Detroit*, 138 N.W.2d 503 (Mich. Ct. App. 1965) (holding that a claim of negligence related to a fall sounded in

ordinary negligence). *But see Sturgis Bank & Trust Co. v. Hillsdale Cmty. Health Ctr.*, 708 N.W.2d 453 (Mich. Ct. App. 2005) (holding that, under *Bryant*, fall in hospital sounded in medical malpractice).

Similarly, in *Pryor ex rel. Pryor v. Harper Hosp.-DMC*, Case No. 301942, 2013 WL 5878676 (Mich. Ct. App. Oct. 31, 2013), the court held that the plaintiff's claim that he (a minor) was burned by a malfunctioning halogen light sounded in ordinary negligence. The court reached this conclusion because the plaintiff based his claim of negligence on the defendant's decision to use a malfunctioning halogen light that needed to be replaced. The plaintiff asserted that his burn resulted from the fact that the light was malfunctioning, not from the decision of the hospital to leave him exposed to too hot of a light for too long. The court concluded that it was within the province of a lay jury to evaluate whether it was negligent to use a malfunctioning piece of equipment.

Here, Wang makes a wholly different claim from that in *Pryor*. She alleges that MidMichigan nurses negligently left an infant exposed to a heat source without taking into account the effects on newborn skin of prolonged exposure to that heat source. This claim for relief asks a jury to rely upon specialized knowledge about the relative sensitivity of newborn skin. It also asks a jury to assess the propriety of using a hot water bottle to warm a newborn that has entered cold stress. These are not topics about which lay people possess common knowledge.[4]

---

[4] The court in *Pryor* did observe that the reasonableness of the hospital placing the light "so close to plaintiff's body that he is burned . . . can be evaluated by lay jurors on the basis of their common knowledge and experience." *Pryor*, 2013 WL 5878676, at *5. But to the extent the court was determining that a jury can opine on the proper standard of care for providing heat to a newborn without specialized knowledge, the *Pryor* court's unpublished decision will not be followed.

Because Wang alleges behavior that can only be evaluated with the assistance of specialized medical knowledge concerning the sensitivity of a newborn's skin, her claim sounds in professional negligence. Her ordinary negligence claim will be dismissed.

**B.**

Next, MidMichigan moves for dismissal of all of Wang's individual claims, to the extent she alleges any other individual claims than the specifically identified negligent infliction of emotional distress ("NIED") claim. MidMichigan argues that Wang's NIED claim is time-barred by the applicable statute of limitations and that Wang does not state an NIED claim. Wang, in her response, alleges that her only individual claims are her NIED claim and her claim for "injuries and damages," to the extent that is a standalone claim.

**1.**

MidMichigan argues that Wang's NIED claim is time-barred because it is an independent cause of action that accrued at the time of the harm to her minor son. Wang contends that her NIED claim is derivative of her son's claims and thus is also tolled by the Mich. Comp. Laws § 5851(7), which allows a claim of injury by a minor to be brought any time before his tenth birthday.

Under Michigan law, "a claim of negligent or intentional infliction of emotional distress may be maintained as a separate, independent cause of action and is not dependent upon actual injury to, or recovery by, another person." *Auto Club Ins. Ass'n v. Hardiman*, 579 N.W.2d 115, 117 (Mich. Ct. App. 1998). The court in Auto Club specifically distinguished claims of NIED and IIED—which are not derivative causes of action—from claims of loss of consortium—which are derivative. Wang attempts to use Michigan law on consortium claims to sustain her NIED

claim, but that law is unhelpful. Wang specifically pleads an NIED claim. To the extent she does, it is an independent cause of action and not derivative of her son's malpractice claims.[5]

Claims of NIED under Michigan law have, at most, a three-year limitations period. The Revised Judicature Act provides that "the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property." Mich. Comp. Laws § 600.5805(10).[6] Wang's claim for NIED accrued when her son was injured on December 27, 2005. The statute of limitations expired on December 27, 2008.

**2.**

Wang claims that MidMichigan should be estopped from claiming that her NIED claim is time-barred. The basis of this argument is the fact that MidMichigan "offered to reimburse Mrs. Wang for her lost time and other economic damages over a period beginning in December of 2005 and extending into March of 2015." Pl.'s Resp. Br. 32, ECF No. 23. Wang further states that "Seelhoff specifically wanted her not to '*get an attorney involved.*'" *Id.* (emphasis in original).

Wang's argument is both underdeveloped and misleading. First, Wang makes no effort to connect her allegations about MidMichigan's representations to any of the elements of estoppel.

---

[5] Wang asserts that in *May v. William Beaumont Hosp.*, 448 N.W.2d 497, 505 (Mich. Ct. App. 1989), "[t]he Court of Appeals held that the parents' claims of emotional distress were not independent of the child's." Pl.'s Resp. Br. 26, ECF No. 23. *May* does not so hold. In fact, the court in *May* affirmed the trial court's dismissal of the parents' NIED claims because the parents did not present any evidence that they suffered physical harm.

The court went on to address the parents' claims that they were owed independent duties by the defendants and that the defendants breached that duty. That is, the parents sought to sustain their own negligence cause of action. In response to this argument the court in May explained that the parents' claims of negligence "are entwined with the allegations of malpractice with respect to the care of the newborn child." *May*, 448 N.W.2d at 505.

[6] The limitations period for Wang's claim is likely two years. Under Michigan law, "[t]he type of interest harmed, rather than the label given the claim, determines what limitations period controls." *Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.*, 449 N.W.2d 673, 675 (Mich. Ct. App. 1989). Because the injury underlying Wang's NIED claim is one that sounds in medical malpractice, the two year limitations period for medical malpractice claims found in Mich. Comp. Laws Ann. § 600.5805(6) applies.

The Michigan Supreme Court has explained that it "has been reluctant to recognize an estoppel in the absence of conduct clearly designed to induce 'the plaintiff to refrain from bringing action within the period fixed by statute.'" *Lothian v. City of Detroit*, 324 N.W.2d 9, 18 (Mich. 1982) (quoting *Renackowsky v. Bd. of Water Comm'rs of City of Detroit*, 81 N.W. 581, 582 (Mich. 1900)). Wang has not demonstrated any conduct by MidMichigan that could be interpreted as "clearly designed to induce [her] to refrain from bringing action within the period fixed by statute." *Id.* (internal quotation marks omitted). Her only evidence are two early letters (in late 2005 and very early 2006) that offer to compensate Wang for expenses related to her son's injury and which accept responsibility for the injury. Neither letter rises to conduct clearly intended to prevent her from bringing suit.

Wang next relies on a representation from "Seelhoff." Presumably she refers to a chain of emails she exchanged with Liz Seelhoff, MidMichigan's Patient Safety Manager, in 2015. Unlike the prior two letters Wang relies upon, this email exchange was not referenced in Wang's complaint and so is not admissible at the motion to dismiss stage.

Even if this exchange was admissible, it is of no help to Wang's argument. Wang claims that "Seelhoff specifically wanted her not to 'get an attorney involved.'" Pl.'s Resp. Br. 32, ECF No. 23. But that is a direct misrepresentation of the facts. Ms. Seelhoff simply stated that MidMichigan "want[s] to verify that you have not contacted or are currently working with an attorney. If there is an attorney involved, communications would then need to go through that attorney." Seelhoff Correspondence, Ex. C, Pl.'s Resp., ECF No. 23-4. Wang's representation that Ms. Seelhoff was actively campaigning for her not to hire an attorney inappropriately distorts the actual content of the exchange.

But, once more, even if this exchange could substantiate conduct sufficient to justify estoppel, it would not achieve that purpose for Wang here because her limitations period had already long run. To claim that MidMichigan is estopped from asserting a statute of limitations defense, Wang would need to identify conduct within the limitations period that MidMichigan engaged in for the purpose of dissuading her from timely bringing her claims. She has not done so.

Wang's NIED claim will be dismissed.

**3.**

Lastly, Defendants move to dismiss all of Wang's individual claims beyond her specifically pled NIED claim. The only individual claim beyond the specific NIED claim that Wang identifies is her claim for "injuries and damages" in Count VI. But the individual factual allegations in that count reflect allegations of physical and emotional suffering as a result of her son's allegedly negligently inflicted injuries. That is, Wang's claims in Count VI are additional NIED allegations. Thus, Wang's individual claims in Count VI of her complaint will be dismissed.

**IV.**

Accordingly, it is **ORDERED** that Defendant MidMichigan's Motion to Dismiss, ECF No. 14, is **GRANTED**.

It is further **ORDERED** that Counts I, IV, & VI of Plaintiff Chunlan Wang's Amended Complaint, ECF No. 6, are **DISMISSED with prejudice as to Chunlan Wang individually**.


Dated: August 1, 2016           s/Thomas L. Ludington  
                                                      THOMAS L. LUDINGTON  
                                                      United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 1, 2016.

                                      s/Michael A. Sian
                                      MICHAEL A. SIAN, Case Manager

1:15-cv-14403-TLL-PTM Doc # 26 Filed 08/01/16 Pg 12 of 12 Pg ID 597

- 12 -